**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN WITHEROW, ) | 3:08-CV-363-LRH (RAM) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | **OF U.S. MAGISTRATE JUDGE** |
| CATHERINE CORTEZ-MASTO, et al., ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's motion for a preliminary injunction (Doc. #7). Defendants have opposed (Doc. #27), and Plaintiff has replied (Doc. #36). After a thorough review, the court recommends that the motion be denied.

**I. BACKGROUND**

This is a prisoner civil rights complaint brought under 42 U.S.C. § 1983. At all relevant times, Plaintiff John Witherow ("Plaintiff") has been in custody of the Nevada Department of Corrections ("NDOC") at Nevada State Prison. Defendants are various NDOC officials and NSP administrators and employees.

The nine counts of the complaint allege a campaign of "institutional vindictiveness" by Defendants whenever Plaintiff has exercised his rights by filing grievances, initiating lawsuits, reporting misconduct, and engaging in "political speech activities." (Pl.'s Compl. (Doc. #1) 7-8.) Plaintiff alleges the following forms of retaliation by prison officials: major disciplinary charges

1

for petty conduct; denial of preferred housing, jobs, programs, and custody status; daily harassment; confiscation of property; disclosing his confidential information to other prisoners; and the initiation of confrontations with him to justify the use of force. (*Id.* at 8-9.) He further alleges that this conduct has a chilling effect on the exercise of his First Amendment rights. (*Id.* at 11.) NSP employees are allegedly trained to enforce such conduct as an unwritten policy and are not discouraged from retaliating against prisoners who exercise their First Amendment rights. (*Id.* at 9-10.)

Plaintiff moves for a preliminary injunction based on Counts I and II of his complaint. Count I alleges that Nevada Revised Statutes ("NRS") § 209.241 was enacted to retaliate against Plaintiff for exercising his First Amendment rights between 1991 and 1996. This provision requires inmates to deposit all monies they receive into an interest bearing[1] account referred to as the Prisoners' Personal Property Fund or be guilty of a gross misdemeanor. NDOC is responsible for keeping an individual accounting for each inmate. The Director is authorized to permit withdrawals for expenditures and must pay over any remaining balance on an individual account when the inmate is released. Nev. Rev. St. 209.241(3). The statute also directs the allocation of interest and expenses for maintaining the account. *Id.* at subsection (4). Plaintiff alleges that this policy prevents him from earning interest on his money through a conventional bank account or other financial instrument. He also alleges that this provision is not enforced against other prisoners. Based on these allegations, Plaintiff claims a violation of his First Amendment right to petition the government for redress of his grievances; his right under Article I of the Nevada Constitution and the federal Constitution to possess property; and his Fourteenth Amendment right to privacy, equal protection, and due process.

///

---

[1] There is a disputed issue as to whether Plaintiff has ever earned interest on his deposited funds. The relevant provision of the NRS suggests that individual accounts kept as part of the Property Fund bear interest. *See* Nev. Rev. St. § 209.241(4) ("The interest and income earned on the money in th Prisoners' Personal Property Fund, after deducting any applicable bank charges, must be credited . . . .")  At this point, it is unclear whether Plaintiff's account has not reflected any interest proceeds because they went toward paying for his portion of the account maintenance fees.

2

Count II makes a similar allegation with respect to NRS § 209.4615, which prevents a prisoner from operating a business without approval from the NDOC Director. Plaintiff alleges that prison officials have failed to adopt procedures and criteria for approval of such a business, and that they have summarily denied his requests to operate a paralegal business within the prison in order to retaliate against him. He claims a violation of the same rights as above.

The motion seeks to enjoin the defendants from enforcing NRS § 209.4615 against him so that he can operate a business within the prison without administrative approval. It also seeks to enjoin the application of NRS § 209.241 so that Plaintiff can deposit his money outside the Prisoners' Personal Property Fund.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted).[2]

/ / /

---

[2] Before *Winter*, the courts in this circuit applied an alternative, "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter,* the Supreme Court did not directly address the continued validity of the balancing approach. *See Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."). In any case, this court will require Plaintiff to make a showing on all four of the traditional preliminary injunction requirements. Applying the balancing approach here would not lead to a different result, as Plaintiff has not made a strong showing on any single factor for injunctive relief. *See infra*.

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant in a lawsuit challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## III. DISCUSSION

### A. LIKELIHOOD OF SUCCESS

Plaintiff cannot demonstrate a likelihood of success on the merits of Counts I and II of his complaint. While Plaintiff cites to authorities supporting sundry constitutional rights related to operating a business and controlling the disposition of one's income, he does not explain how his status as a prisoner affects the exercise of those rights. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). However, prison restrictions that limit prisoners' constitutional rights may be upheld if they are "reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254.

With respect to the right to operate a business within prison, several circuit courts have rejected the proposition that this is a constitutionally protected right. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir.2005) (preventing an inmate from conducting a business is a "permissible restriction on prisoners' residual freedom"); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980) ("[A] prisoner has no recognized right to conduct a business while incarcerated."); *Garland v. Polley*, 594 F.2d 1220, 1221-22 (8th Cir. 1979) (finding no First or

Fourteenth Amendment right to operate a prison business). Additionally, under circumstances analogous to this case, the Supreme Court has held that the state may prevent an inmate from receiving compensation for rendering legal assistance. *Johnson v. Avery*, 383 U.S. 483, 490 (1969). Therefore, it seems unlikely that Plaintiff could succeed in his claim that his right to operate his paralegal business is constitutionally protected. As a result, the procedural protections of the Fourteenth Amendment Due Process Clause do not apply. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).

The federal Constitution provides no support for Plaintiff's claims relating to his right to deposit money outside his inmate account. The procedural protections of the Fourteenth Amendment[3] apply when the government makes an individualized determination affecting an individual's rights, not when the government performs a legislative act equally affecting all those similarly situated. *Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992) (citations omitted). The Nevada legislature has enacted a statute requiring all inmates to deposit money earned into their prison bank accounts, not only Plaintiff. Therefore, there is no obligation for the prison to provide Plaintiff with any particular process before enforcing this regulation. Plaintiff is therefore unlikely to prevail on his Fourteenth Amendment claim.

With respect to Plaintiff's First Amendment claims, prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).

---

[3] The court construes this as a procedural due process claim because Plaintiff appears to argue that he was denied due process, particularly "notice, a hearing and procedural protections." (Pl.'s Mtn. (Doc. #17) 18.) The *Foster* court rejected the same claim under the substantive due process component of the Fourteenth Amendment, recognizing several security justifications for the regulation, that private inmate accounts would seriously burden the operation of the prison, and that there were no practical alternatives for inmates outside the prison. 979 F.2d at 132-33.

Plaintiff's claims fail the second and third elements of this analysis. He offers no evidence that the Nevada legislature took the extraordinary step of passing the statutes at issue here in response to the exercise of his First Amendment rights. Plaintiff includes a voluminous exhibit containing the legislative history for these provisions, but no explanation of how the record supports his retaliation theory. The court will not scour the record to find support for Plaintiff's assertions. *Cf. Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774-75 (9th Cir.2002). Similarly, Plaintiff fails to offer any evidence to support his equal protection claim that he was treated differently from other prisoners in the enforcement of either provision.

Plaintiff also asserts a general right to privacy in his personal affairs. Presumably, Plaintiff objects to the prison having access to his financial information through its administration of the Prisoners' Personal Property Fund. This states a claim under the "confidentiality" strand of the right to privacy, which refers to the "individual interest in avoiding disclosure of personal matters."[4] *Whalen v. Roe*, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876-77 (1977). This turns on whether there is a reasonable expectation of privacy as determined by a "balancing of interests." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Prisoners have "extremely limited" Fourth Amendment rights while incarcerated. *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir.1981) (citing *Stroud v. United States*, 251 U.S. 15, 21-2, 40 S.Ct. 50, 64 L.Ed. 103 (1919)).

In this case, Plaintiff does not establish why his privacy expectation is reasonable despite the competing institutional security interests for the prison. These interests have led to the conclusion that a prisoner has no expectation of privacy in his cell or the physical possessions therein, *Hudson v. Palmer*, 486 U.S. 517, 525-26 (1984); his non-legal telephone calls, *United*

---

[4] The other aspect of the constitutional privacy doctrine is the "autonomy" strand, which refers to "the interest in independence in making certain kinds of important decisions. *Whalen*, 429 U.S. at 599-600; 97 S.Ct. at 876-77. The court construes the claim as invoking this aspect of the right to privacy with respect to Plaintiff's alleged right to operate a prison business. That must fail, however, because the autonomy strand is related to such matters as "marriage, procreation, contraception, family relationships, and child rearing and education." *Id*. at n. 26. Plaintiff offers no argument to justify why this category should be broadened to include one's financial affairs while incarcerated.

*States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996); and only a limited Fourth Amendment interest in his person and his mail, *Michenfelder v. Sumner*, 860 F.2d 329, 333-34 (9th Cir. 1998); *Witherow v. Crawford*, 468 F.Supp.2d 1253 (D.Nev. 2006). The Eighth Circuit Court of Appeals has recognized several institutional security concerns justifying a requirement that inmate accounts be kept with the prison, including the need to "(1) deter escapes by preventing inmate access to available funds outside the prison; (2) enforce prison rules against inmate possession of cash and prevent 'strong arming' and extortion of funds from weaker inmates; (3) prevent inmate fraud upon those outside the prison; and (4) prevent use of inmate funds for illegal purposes such as gambling, drugs or gang activities." *Foster*, 979 F.2d at 132. Given the various justifications inmate accounts being kept through the institution, Plaintiff fails to demonstrate that his asserted privacy interest is reasonable.

Finally, Plaintiff asserts that the challenged statutes impact his right to "acquire and possess property" under the Nevada and federal constitutions. Specifically, he contends that he is unable to "protect his property from inflation and to acquire interest or profits from his financial resources." (Doc. #7 at 23.) He does not, however, provide any authority for the proposition that either constitution has been interpreted to provide for such a right, let alone for a prison inmate. The premise of this claim is also flawed, given that the inmate account is supposed to be interest bearing, less the inmate's portion of the fees to maintain the Inmate Trust Account. Nev. Rev. St § 209.241(4)(a). There is nothing in the record regarding whether Plaintiff has received interest on his account. Furthermore, courts have held that reasonable restrictions on the right to possess property do not offend the federal Constitution. The state has "'a compelling interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and non-arbitrary ways, property claims by inmates must give way.'" *Harris v. Forsyth*, 735 F.2d 1235, 1235 (11th Cir. 1984) (quoting *Sullivan v. Ford*, 609 F.2d 197 (5th Cir.1980)). Other courts have recognized the penological justifications for restricting inmate accounts, *see infra*, and the prison appears to afford inmates an interest-bearing account to deposit their money. Therefore, Plaintiff has failed to carry his burden to

demonstrate a likelihood of success on the merits of his property claims.

Plaintiff alternatively contends that NRS § 209.241 is vague and ambiguous because it unclear precisely what income and assets must be kept in the Property Fund, whether this applies to property held outside the prison, and whether this applies to property previously acquired by Plaintiff prior to his incarceration. (Pl.'s Mtn. 24-25.) However, in this case, the only actual property interest pled by Plaintiff is a $4,500 settlement that he received from NDOC in 2008 from a different civil rights lawsuit. (Pl.'s Mtn. 7.1; Id. at Ex. 2, ¶¶ 7-11.) This income falls squarely within the plain meaning of NRS § 209.241(2), which provides that "[a]n offender shall deposit all money that he receives into his individual account in the Prisoners' Personal Property Fund." Nev. Rev. St. § 209.241(2). Therefore, the court finds that as applied to Plaintiff, the statute is not vague and ambiguous.

**B.   POSSIBILITY OF IRREPARABLE INJURY**

No chance of success on the merits will suffice on a motion for preliminary injunction. *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). As set forth above, Plaintiff has failed to make an adequate showing on the merits of his claims. Thus, the court need not determine whether Plaintiff may suffer any irreparable injury. It should be noted that aside from any injuries to his constitutional rights, which seem fairly unlikely, Plaintiff's losses from foregone investment returns or income from his business can be compensated through money damages without the need for injunctive relief.

**C.   REMAINING FACTORS FOR A PRELIMINARY INJUNCTION**

There is no definite irreparable harm that will befall Plaintiff absent an injunction. Should this court grant the motion, however, the security interests of the prison could be undermined by allowing prisoners to keep personal accounts outside the prison, which would tip the balance of hardships in favor of Defendants and would also suggest that the public interest is not being promoted. *See* 18 U.S.C. § 3626(a)(2) (requiring courts to accord "substantial weight" to the effects of injunctive relief on the operation of the prison). It is also

unclear how allowing an inmate to operate a private business within the institution would materially advance the public interest, given that courts have declined to recognize such a right as constitutionally protected.

Because none of the factors for injunctive relief favor granting the motion, it should be denied. Plaintiff's request for an evidentiary hearing (Doc. #57) should also be denied, as the court finds that none of the witnesses or topics identified therein would aid in the determination of this motion.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Preliminary Injunction (Doc. #7).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for a Hearing (Doc. #57).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 3, 2009

_____
UNITED STATES MAGISTRATE JUDGE

9