1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JOHN WITHEROW,                          )          3:08-CV-363-LRH (RAM)
                                        )
            Plaintiff,                  )          **REPORT AND RECOMMENDATION**
                                        )          **OF U.S. MAGISTRATE JUDGE**
     vs.                                )
                                        )
CATHERINE CORTEZ-MASTO, et al.,         )
                                        )
            Defendants.                 )
_____ )

        This Report and Recommendation is made to the Honorable Larry R. Hicks, United

States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

        Before the court is Defendants' Motion to Dismiss. (Doc. #23.)[1]  Plaintiff has opposed

(Doc. #55), and Defendants have replied (Doc. #58).  After a thorough review, the court

recommends that the motion be granted, in part, and denied, in part.

## I. BACKGROUND

        This is a prisoner civil rights complaint brought under 42 U.S.C. § 1983.  At all relevant

times, Plaintiff John Witherow  has been in custody of the Nevada Department of Corrections

(NDOC) at Nevada State Prison (NSP).  Defendants are various NDOC officials and NSP

administrators and employees.

        The nine counts of the complaint allege a campaign of "institutional vindictiveness" by

Defendants whenever Plaintiff has exercised his rights by filing grievances, initiating lawsuits,

_____

[1] Refers to court's docket number.

1

reporting misconduct, and engaging in "political speech activities." (Pl.'s Compl. 7-8 (Doc. #1).) Plaintiff alleges the following forms of retaliation by prison officials: major disciplinary charges for petty conduct; denial of preferred housing, jobs, programs, and custody status; daily harassment; confiscation of property; disclosing his confidential information to other prisoners; and the initiation of confrontations with him to justify the use of force. (*Id.* at 8-9.) He further alleges that this conduct has a chilling effect on the exercise of his First Amendment rights. (*Id.* at 11.) NSP employees are allegedly trained to enforce such conduct as an unwritten policy and are not discouraged from retaliating against prisoners who exercise their First Amendment rights. (*Id.* at 9-10.)

In Counts I and II, Plaintiff alleges that Defendants enacted Nevada Revised Statutes (NRS) § 209.241 and NRS § 209.4615 to retaliate against him in violation of the First Amendment. (*Id.* at 14-18;19-23.) Plaintiff also claims that Defendants' enforcement of the statutes violates his right under Article I of the Nevada Constitution and the federal Constitution to possess property and his Fourteenth Amendment right to privacy, equal protection, and due process. (*Id.*)

In Counts III-VII, Plaintiff claims that Defendants retaliated against him in violation of the First Amendment by denying him participation in the Wings program, falsely charging him with disciplinary violations, denying him preferred housing and classification status, refusing to hire him for a preferred job program, creating the impression among other prisoners he is an administrative informant, and disclosing confidential information to other prisoners. (*Id.* at 24-46.)

In Counts VIII and IX, Plaintiff alleges that Doe Defendants XI-XX and Defendant Skolnik failed to train NDOC employees resulting in violations of the First and Fourteenth Amendments. (*Id.* at 47-52.)

## **II. LEGAL STANDARD**

In general, if a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the motion will be treated as one for summary judgment.

1   Fed. R. Civ. P. 12(d).  There is, however, a narrow exception allowing the court to consider a

2   limited set of documents without converting the motion into one for summary judgment,

3   including documents attached to the complaint, matters of judicial notice, or documents

4   incorporated by reference in the complaint upon which the complaint "necessarily relies."

5   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003);  *Lee v. City of Los Angeles*, 250

6   F.3d 668, 688 (9th Cir. 2001).   "A court may consider evidence on which the complaint

7   'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to

8   the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the

9   12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Such a document may

10  be treated as part of the complaint, and the court "may assume that its contents are true for

11  purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908 (9th Cir. 2003).

12  The instant motion falls within this exception because it is only necessary to consider

13  grievances and grievance reports referenced by Plaintiff in his complaint that are central to his

14  claims and whose authenticity is not questioned by either party.

15      "A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law."

16  *North Star Int'l v. Ariz. Corp. Comm.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).

17  At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on

18  its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint need not

19  contain detailed factual allegations, but it must contain more than "a formulaic recitation of

20  the elements of a cause of action." *Id*. at 555.  The Rule 8(a) notice pleading standard requires

21  the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon

22  which it rests."  *Id*. at 1964 (internal quotations and citation omitted).  The "plausibility

23  standard" does not impose a "probability requirement," rather, it requires a complaint to

24  contain "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v.

25  Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are merely consistent

26  with a defendant's liability, it stops short of the line between possibility and plausibility of

27  entitlement to relief." *Id*.

28                                                    3

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted).   However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A court should assume the veracity of well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citations, brackets, and quotation omitted).  Thus, a complaint may be dismissed as a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984)).

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed where it appears certain that the plaintiff would not be entitled to relief. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996).  Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

## III. DISCUSSION

**A.    Counts I and II - NRS § 209.241 AND NRS § 209.4615**

In Count I, Plaintiff alleges that Nevada Revised Statutes (NRS) § 209.241 was enacted to retaliate against him for exercising his First Amendment rights between 1991 and 1996. (*Id.*

4

at 14.)  This provision requires inmates to deposit all monies they receive into an interest bearing account referred to as the Prisoners' Personal Property Fund or be guilty of a gross misdemeanor. NDOC is responsible for keeping an individual accounting for each inmate. The NDOC Director is authorized to permit withdrawals for expenditures and must pay over any remaining balance on an individual account when the inmate is released.  NRS § 209.241(3).  The statute also directs the allocation of interest and expenses for maintaining the account.  NRS § 209.241(4).  Plaintiff alleges that this policy prevents him from earning interest on his money through a conventional bank account or other financial instrument.  (Pl.'s Compl. 15.)  He also alleges that this provision is not enforced against other prisoners.  (*Id*. at 16.)  Based on these allegations, Plaintiff claims a violation of his First Amendment right to petition the government for redress of his grievances; his right under Article I of the Nevada Constitution and the federal Constitution to possess property; and his Fourteenth Amendment right to privacy, equal protection, and due process.  (*Id*. at 16-18.)

In Count II, Plaintiff makes a similar allegation as he makes in Count I with respect to NRS § 209.4615, which prevents a prisoner from operating a business without approval from the NDOC Director.  (*Id*. at 20.)  Plaintiff alleges that prison officials have failed to adopt procedures and criteria for approval of such a business, and that they have summarily denied his requests to operate a paralegal business within the prison in order to retaliate against him.  (*Id*. at 20-21.)  He claims a violation of the same rights as in Count I.  (*Id*. at 22-23.)

**1.      First Amendment Retaliation**

With respect to Plaintiff's First Amendment claims, prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  Within the prison context, a viable claim of First Amendment retaliation contains five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes*

*v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004).  The protected conduct should be a "substantial" or "motivating" factor in the retaliatory actions.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  Thus, a prisoner must (1) submit evidence to establish a link between the exercise of constitutional rights and alleged retaliatory action, and (2) demonstrate that his or her First Amendment rights were actually chilled by the alleged retaliatory action.  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

"The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."  *Pratt,* 65 F.3d at 806 (9th Cir. 1995).  In analyzing a retaliation claim, a court should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Plaintiff's claims fail the second and third elements of this analysis.  Beyond merely asserting that the Nevada Legislature retaliated against him, Plaintiff offers no other factual support indicating that the Nevada Legislature took the extraordinary step of passing the statutes at issue in this action in response to the exercise of his First Amendment rights.  Therefore, Plaintiff fails to present facts sufficient to show his retaliation claims are plausible on their face.

### 2.   Property Claims

Plaintiff asserts that the challenged statutes impact his right to "acquire and possess property" under the Nevada and federal constitutions.  Specifically, he contends that he is unable to "deposit his funds in an account or financial instrument that does not require him to pay any maintenance fee and that actually pays him a substantially higher interest rate for the use of his money than is paid to him by the NDOC account." (Pl.'s Opp. 11 (Doc.#55).)  He does not, however, provide any authority for the proposition that either constitution has been interpreted to provide for such a right, let alone for a prison inmate.  Furthermore, courts have

1   held that reasonable restrictions on the right to possess property do not offend the federal

2   Constitution.  The state has "'a compelling interest in maintaining security and order in its

3   prisons and, to the extent that it furthers this interest in reasonable and non-arbitrary ways,

4   property claims by inmates must give way.'"  *Harris v. Forsyth*, 735 F.2d 1235, 1235 (11th Cir.

5   1984) (quoting *Sullivan v. Ford*, 609 F.2d 197 (5th Cir.1980)).  Other courts have recognized

6   the penological justifications for restricting inmate accounts, *see infra*, and the prison appears

7   to afford inmates an interest-bearing account to deposit their money.  Therefore, Plaintiff has

8   failed to demonstrate plausible claims with respect to his right to acquire and possess property

9   under the Nevada and federal constitutions.

10        **3.    Right to Privacy**

11        Plaintiff also asserts a general right to privacy in his personal affairs.  Presumably,

12   Plaintiff objects to the prison having access to his financial information through its

13   administration of the Prisoners' Personal Property Fund.  This states a claim under the

14   "confidentiality" strand of the right to privacy, which refers to the "individual interest in

15   avoiding disclosure of personal matters."[2]  *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).  This

16   turns on whether there is a reasonable expectation of privacy as determined by a "balancing of

17   interests."  *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

18   Prisoners have "extremely limited" Fourth Amendment rights while incarcerated.  *United

19   States v. Vallez*, 653 F.2d 403, 406 (9th Cir.1981) (citing *Stroud v. United States*, 251 U.S. 15,

20   21-22 (1919)).

21        In this case, Plaintiff fails to plausibly allege that his privacy expectation is reasonable

22   despite the competing institutional security interests for the prison.  These interests have led

23

24        [2] The other aspect of the constitutional privacy doctrine is the "autonomy" strand, which refers to "the
interest in independence in making certain kinds of important decisions. *Whalen*, 429 U.S. at 599-600. The court

25   construes the claim as invoking this aspect of the right to privacy with respect to Plaintiff's alleged right to operate
a prison business.  That must fail, however, because the autonomy strand is related to such matters as "marriage,

26   procreation, contraception, family relationships, and child rearing and education."  *Id.* at n. 26.  Plaintiff offers
no persuasive argument to justify why this category should be broadened to include one's financial affairs while

27   incarcerated.

28                                                    7

to the conclusion that a prisoner has no expectation of privacy in his cell or the physical possessions therein, *Hudson v. Palmer*, 486 U.S. 517, 525-26 (1984); his non-legal telephone calls, *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996); and only a limited Fourth Amendment interest in his person and his mail, *Michenfelder v. Sumner*, 860 F.2d 329, 333-34 (9th Cir. 1998); *Witherow v. Crawford*, 468 F.Supp.2d 1253 (D.Nev. 2006). The Eighth Circuit Court of Appeals has recognized several institutional security concerns justifying a requirement that inmate accounts be kept with the prison, including the need to "(1) deter escapes by preventing inmate access to available funds outside the prison; (2) enforce prison rules against inmate possession of cash and prevent 'strong arming' and extortion of funds from weaker inmates; (3) prevent inmate fraud upon those outside the prison; and (4) prevent use of inmate funds for illegal purposes such as gambling, drugs or gang activities." *Foster v. Hughes*, 979 F.2d 130, 132 (8th. Cir. 1992). Given the various justifications for inmate accounts being kept through the institution, Plaintiff fails to state facts showing that his asserted privacy interest is reasonable and, thus, fails to state a plausible privacy claim.

### 4.   Equal Protection

Plaintiff fails to plead facts sufficient to support his equal protection claim that he was treated differently from other prisoners in the enforcement of either provision. In order to state a viable equal protection claim, Plaintiff "must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1971, 1982 (9th Cir. 2003) (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). Here, Plaintiff does not allege Defendants intentionally discriminated against him because of his membership in a protected class. Thus, Plaintiff fails to adduce facts supporting a plausible equal protection claim in either Count I or Count II.

/ / /

1

### 5.    Due Process

2          The federal Constitution provides no support for Plaintiff's claims relating to his right

3    to deposit money outside his inmate account.  The procedural protections of the Fourteenth

4    Amendment[3] apply when the government makes an individualized determination affecting an

5    individual's rights, not when the government performs a legislative act equally affecting all

6    those similarly situated.  *Foster*, 979 F.2d at 132 (citations omitted).  The Nevada legislature

7    has enacted a statute requiring all inmates to deposit money earned into their prison bank

8    accounts, not only Plaintiff.  Therefore, there is no obligation for the prison to provide Plaintiff

9    with any particular process before enforcing this regulation.  Plaintiff, therefore, fails to state

10   a plausible Fourteenth Amendment Due Process claim in Count I.

11         With respect to the right to operate a business within prison, as asserted by Plaintiff in

12   Count II, several circuit courts have rejected the proposition that this is a constitutionally

13   protected right.  *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005) (preventing

14   an inmate from conducting a business is a "permissible restriction on prisoners' residual

15   freedom"); *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980) ("[A] prisoner has no

16   recognized right to conduct a business while incarcerated."); *Garland v. Polley*, 594 F.2d 1220,

17   1221-22 (8th Cir. 1979) (finding no First or Fourteenth Amendment right to operate a prison

18   business).  Additionally, under circumstances analogous to this case, the Supreme Court has

19   held that the state may prevent an inmate from receiving compensation for rendering legal

20   assistance.  *Johnson v. Avery*, 383 U.S. 483, 490 (1969).  Therefore, Plaintiff fails to plausibly

21   show that his right to operate his paralegal business is constitutionally protected and states a

22   claim under the Fourteenth Amendment Due Process Clause.  As a result, the procedural

23

24         [3] The court construes this as a procedural due process claim because Plaintiff argues in his motion for a
preliminary injunction that he was denied "notice, a hearing and procedural protections." (Pl.'s Mot. for Prelim.
25   Inj. 18 (Doc. #7.) However, even if Plaintiff intends to plead a substantive due process claim, his claim fails. The
*Foster* court rejected such a claim under the substantive due process component of the Fourteenth Amendment,
26   recognizing several security justifications for the regulation, that private inmate accounts would seriously burden
the operation of the prison, and that there were no practical alternatives for inmates outside the prison. *Foster*,
27   979 F.2d at 132-33.

28

protections of the Fourteenth Amendment Due Process Clause do not apply.  *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).

### 6.    Constitutionality of NRS § 209.241

In his opposition to Defendants' Motion to Dismiss, Plaintiff contends that NRS § 209.241 is unconstitutional because it exceeds Nevada's police power. (Pl.'s Opp. 12-13.) Plaintiff argues that there is no evidence that NRS § 209.241 was enacted to protect or preserve the public safety, health, morals or general welfare.  (*Id*.) Rather, Plaintiff asserts that there is evidence that the statute was enacted based on retaliatory motives.  (*Id*.)

The police power of the state legislature is great.  *Zale-Las Vegas v. Bulova Watch Co.*, 396 P.2d 683, 693 (Nev. 1964).  To determine if the enactment of a law is a proper exercise of police power, the law must be reasonably necessary in the interest of the health, safety, morals, or welfare of the people.  *Id*. at 692.  "This exercise of police power must pass the judicial test of reasonableness."

As discussed above, the Eighth Circuit Court of Appeals has recognized several institutional security concerns justifying a requirement that inmate accounts be kept with the prison, including the need to "(1) deter escapes by preventing inmate access to available funds outside the prison; (2) enforce prison rules against inmate possession of cash and prevent 'strong arming' and extortion of funds from weaker inmates; (3) prevent inmate fraud upon those outside the prison; and (4) prevent use of inmate funds for illegal purposes such as gambling, drugs or gang activities."  *Foster*, 979 F.2d at 132.  Given these security concerns, the enactment of NRS § 209.241 appears reasonably necessary to the health, safety, morals, and welfare of the people of Nevada.  Plaintiff fails to plead facts giving rise to a plausible claim that NRS § 209.241 exceeds Nevada's police power.

### 7.    NDOC Authority Under NRS § 209.4615

Plaintiff also asserts in his opposition to Defendants' Motion to Dismiss that under NRS § 209.4615, the NDOC may not arbitrarily deny the operation of prisoner businesses without a written regulation or a hearing. (Pl.'s Opp. 17.)  Plaintiff contends that NRS § 209.4615 does

10

not grant the NDOC the authority to impose a complete ban on all prisoner business operations. (*Id.*)

Under Nevada law, construction of a statute should give effect to the Legislature's intent. *Richardson Constr., Inc. v. Clark County Sch. Dist.*, 156 P.3d 21, 23 (Nev. 2007). A court may "look no further than any unambiguous, plain statutory language" in its determination of the Legislature's intent. *Id.*

NRS § 209.4615 provides, in relevant part:

> 1. An offender shall obtain the approval of the [NDOC] director before he:
>> (a) Engages in any employment, including, but not limited to, employment by a private employer or self-employment;
>> (b) Enters into a contract; or
>> (c) Participates in a business activity.
> 2. The [NDOC] director has sole discretion to approve or disapprove employment, contractual activity or business activity pursuant to subsection 1 and may withdraw his approval at any time.

The language of subsection (2) is unambiguous and plain – the NDOC director has sole discretion to approve or disapprove of offender business activity. From the use of this statutory language, it is clear that the Nevada Legislature intended to give the director full discretion, without limitation, to allow or not to allow all inmate business activity. Therefore, despite Plaintiff's assertions to the contrary, the NDOC director pursuant to NRS § 209.4615 may circumscribe prisoner business operations in their entirety at his discretion.

## C.   REMAINING RETALIATION CLAIMS

As discussed above, within the prison context, a viable claim of First Amendment retaliation contains five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. The protected conduct should be a "substantial" or "motivating" factor in the retaliatory actions. *Mt. Healthy*, 429 U.S. at 283-84. A prisoner must (1) submit evidence to establish a link between the exercise of constitutional rights and alleged retaliatory action, and (2) demonstrate that his or her First

11

Amendment rights were actually chilled by the alleged retaliatory action. *Pratt*, 65 F.3d at 807; *see Resnick*, 213 F.3d at 449. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt,* 65 F.3d at 806. In analyzing a retaliation claim, a court should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

### 1.   Count III

In Count III, Plaintiff alleges that Defendants retaliated against him in violation of the First Amendment by manipulating and recalculating his custody classification points to make him ineligible for a transfer to the Northern Nevada Correctional Center and for participation in the Wings Program. (Pl.'s Comp. 26.) Defendants argue that Plaintiff fails to identify what protected conduct he engaged in that allegedly resulted in his ineligibility for the Program. (Defs.' Reply 6 (Doc. #58).)

Plaintiff fails to state a plausible claim for retaliation in Count III for two reasons. First, as Defendants correctly argue, Plaintiff does not put forth specific facts identifying the conduct he claims is protected. Plaintiff merely states a legal conclusion – that his conduct is protected conduct – instead of supplying facts showing that his conduct is, in fact, the type of conduct that is protected. Second, without factually identifying his protected conduct, Plaintiff cannot create a nexus between his conduct and Defendants' conduct in denying him access to the Wings Program. Thus, Plaintiff does not state a plausible retaliation claim in Count III because he fails to allege facts sufficient to support the second and third elements of a retaliation claim.

### 2.   Count IV

In Count IV, Plaintiff claims that Defendant LaGier retaliated against Plaintiff on July 28, 2008, in violation of the First Amendment by confiscating a box from Plaintiff's cell and writing a disciplinary report charging Plaintiff with two violations of the NDOC Code of Penal Discipline. (Pl.'s Compl. 30-31.) Defendant LaGier argues that Plaintiff has failed to exhaust

1    his administrative remedies.  (Defs.' Mot. 7; Defs.' Reply 6.)

2         Plaintiff alleges that he filed several grievances against Defendant LaGier based on

3    various disputes during June and July 2009.  (Pl.'s Compl. 30.)  Plaintiff claims Defendant

4    LaGier searched all cells in Plaintiff's unit on or about July 28, 2008, and confiscated a box from

5    Plaintiff's cell that had another prisoner's number on it.  (*Id*. at 30-31.)  According to Plaintiff,

6    Defendant LaGier confiscated the box and wrote a disciplinary report against Plaintiff for two

7    violations of the NDOC Code of Penal Discipline, not simply for possession of the box, but

8    because of Plaintiff's previously filed grievances against Defendant LaGier.  (*Id*. at 31; Pl.'s Opp.

9    26-28.)  Plaintiff filed grievance number 2006-4-13203 regarding this incident.  (Pl.'s Compl.

10   31; Pl.'s Opp. 58.)  In his informal grievance, Plaintiff described the incident and stated that

11   "there is no posted rule prohibiting me from having the box [with another prisoner's number

12   on it] in my cell of which I am aware[.]" (Pl.'s Opp. 60.)

13        Taking these factual allegations as true, Plaintiff states a plausible retaliation claim

14   against Defendant LaGier.  Plaintiff asserts that Defendant LaGier took the adverse action of

15   removing a box from Plaintiff's cell and charging him with disciplinary violations.  Plaintiff

16   alleges facts that support the inference that Defendant LaGier was substantially motivated to

17   take the adverse action because of Plaintiff's protected activity of filing grievances against

18   Defendant LaGier.  Filing a grievance with prison officials is a protected activity under the First

19   Amendment, *see Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997), and "timing can

20   properly be considered as circumstantial evidence of retaliatory intent." *Bruce v. Ylst*, 351 F.3d

21   1283, 1288 (9th Cir. 2003)(quoting *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

22   Although Plaintiff does not specifically allege, in so many words, that his exercise of his First

23   Amendment rights was chilled, he need only show that "the adverse action at issue 'would chill

24   *or* silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*

25   *v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)(quoting *Rhodes*, 408 F.3d at 658-69)(emphasis in

26   original).  Moreover, "a plaintiff who fails to allege a chilling effect may still state a claim if he

27   alleges he suffered some other harm." *Id*. at 1269(citing *Rhodes*, 408 F.3d at 578 n. 11.)  Here,

28
                                        13

1   Plaintiff alleges that Defendant LaGier charged him with unfounded disciplinary charges

2   because he filed grievances. Taking Plaintiff's allegations as true, a person of ordinary firmness

3   may have been chilled from future First Amendment activity if wrongly charged with

4   disciplinary violations. Finally, Plaintiff claims Defendant LaGier's actions did not reasonably

5   advance a legitimate correctional goal. In grievance number 2006-4-13203, which Plaintiff

6   references in his complaint, he alleges that there is no NDOC rule prohibiting his possession of

7   a box with another inmate's number on it. Thus, construing the facts most favorably to Plaintiff

8   as the non-moving party, Plaintiff states facts supporting all five elements of a plausible

9   retaliation claim against Defendant LaGier.

10       Defendant LaGier's contention that Plaintiff failed to exhaust his administrative remedies

11   is without merit. The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be

12   brought with respect to prison conditions under section 1983 of this title, or any other Federal

13   law, by a prisoner confined in any jail, prison, or other correctional facility until such

14   administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must

15   exhaust his administrative remedies irrespective of the forms of relief sought and offered

16   through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme

17   Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise

18   procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford*

19   *v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds

20   out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting

21   *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

22       Defendant LaGier argues that Plaintiff failed to identify him until the Second Level

23   grievance review. (Defs.' Mot. 7.) However, Plaintiff specifically identifies Defendant LaGier

24   and describes the incident in his initial informal grievance, number 2006-4-13203, filed in

25   August 2006. (Pl.'s Opp. 58, 60-61.) After the denial of his informal grievance, Plaintiff

26   proceeded to the First Level of review. (*Id*. at 67.) After denial at the First Level, Plaintiff

27   proceeded to the Second Level of review. (*Id*. at 70.) Thus, Plaintiff identified Defendant LaGier

28

1   and properly used all steps held out by the NDOC so that his grievance was addressed on its
2   merits.

3        **3.**     **Count V**

4        In Count V, Plaintiff asserts that Defendants retaliated against him in violation of the
5   First Amendment by charging him with a baseless disciplinary violation, finding him guilty of
6   the charge despite the lack of supporting evidence, and using the guilty finding to deny him
7   preferred housing and Level 1 status and NSP.  (Pl.'s Compl. 34-37.)

8        Plaintiff fails to state a plausible claim for retaliation in Count V because does not allege
9   facts establishing a nexus between his protected activity and Defendants' actions. Presumably,
10  Plaintiff claims the protected activity he engaged in was sending a letter in the mail.  (*Id.* at 34-
11  35.)  Generally, prisoners have "a First Amendment right to send and receive mail." *Witherow*
12  *v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curium).  Even though he identifies this activity,
13  Plaintiff fails to show that Defendants took the alleged actions "because of" the activity.  Plaintiff
14  does not state sufficient facts to create a nexus between his mailing of a letter and Defendants'
15  conduct of charging him with a disciplinary violation, finding him guilty, and using the guilty
16  finding to deny him particular housing and status.  Thus, Plaintiff does not state a plausible
17  retaliation claim in Count V because he fails to allege facts sufficient to support the second
18  element of a retaliation claim.

19       **4.**     **Count VI**

20       In Count VI, Plaintiff claims that in retaliation for his First Amendment activities
21  Defendant Baca refused to hire him for a preferred job program, Defendant Baca and Defendant
22  Grafton created the impression among other prisoners that Plaintiff is an administrative
23  informant, and Defendants Baca, Grafton, Habberfield, and Zappattini disclosed some of
24  Plaintiff's confidential information to other prisoners to cause him harm.  (Pl.'s Comp. 38-42;
25  Pl.'s Opp. 29-30.)  Defendants argue that Plaintiff fails to establish a link between the
26  unidentified protected activity he claims to have undertaken and the alleged retaliation. (Defs.'
27  Reply 7.)

28                                                15

1    Count VI suffers from the same legal infirmities as Count III.  Plaintiff fails to factually
2    identify and factually support his claim that he engaged in protected First Amendment activity
3    and, thus, also fails to establish a nexus between his activity and Defendants' actions.  Therefore,
4    Plaintiff does not state a plausible retaliation claim in Count VI because he fails to allege facts
5    sufficient to support the second and third elements of a retaliation claim.

6        **5.    Count VII**

7        In Count VII, Plaintiff claims Defendant Baker charged him with disciplinary violations
8    to retaliate against him for his filing a grievance regarding her alleged impermissible
9    interception of Plaintiff's confidential legal communications.  (Pl.'s Comp. 43-46; Pl.'s Opp. 30-
10   31.)   Defendants contend that Plaintiff was properly charged with a disciplinary violation
11   because Plaintiff violated prison rules.  (Defs.' Mot. 8-9.)  Defendants argue that Plaintiff was
12   required to submit a written request to make a personal phone call.  Defendants assert that
13   Plaintiff failed to submit a request, made a personal phone call to his mother, and later tried to
14   construe his phone call as a legal phone call.  (Defs.' Mot., Ex. D at 52-53.)

15       Plaintiff fails to allege facts to support the fifth element of a retaliation claim.
16   Specifically, Plaintiff fails to plausibly show that Defendants' actions did not reasonably advance
17   a legitimate correctional goal.  Plaintiff alleges that, on prior occasions, he and other inmates
18   were allowed to make legal and personal phone calls on the same day without submitting
19   separate written requests,  even though official policy required separate written requests.  (Pl.'s
20   Compl. 43.)  Plaintiff claims that the first time he used the phone after filing the grievance
21   regarding Defendant Baker impermissibly intercepting his legal calls, Defendant Baker charged
22   him with a disciplinary violation for making a legal and personal call on the same day.  (*Id*. at
23   44.)  Although these allegations establish a plausible causal nexus, Plaintiff does not allege that
24   Defendants' actions failed to reasonably advance a legitimate correctional goal.  Although the
25   court should defer to Plaintiff's factual allegations, it should not assume that "the [plaintiff] can
26   prove facts which [he or she] has not alleged."  *Associated Gen. Contractors of California, Inc.*
27   *v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor must the court "accept

28

16

as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (citation omitted), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations). Here, Plaintiff fails to plead "the absence of legitimate correctional goals for the conduct of which he complains." *Pratt,* 65 F.3d at 806. Therefore, Plaintiff fails to plead a plausible retaliation claim in Count VII.

## C.   FAILURE TO TRAIN CLAIMS

In Count VIII, Plaintiff claims that Doe Defendants XI-XX failed to adequately train all other Defendants "in matters pertaining to retaliatory or punitive actions against prisoners for exercising their constitutional rights." (Pl.'s Compl. 47.)

In Count IX, Plaintiff alleges that Defendant Skolnik "failed to adequately and sufficiently train the NDOC employee Defendants in this action" regarding "the prohibition against any type of retaliatory or punitive actions against prisoners for exercising their constitutional rights." (*Id.* at 50.) Plaintiff also claims Defendant Skolnik failed "to adopt and implement adequate or sufficient policies and procedures to govern training in those matters." (*Id.*)

To be liable under 42 U.S.C. § 1983, a defendant must have been personally involved in the alleged deprivation of the plaintiff's rights. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). Plaintiff must allege facts indicating that a supervisory defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional

1  violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040,

2  1045 (9th Cir. 1989).

3          In both Count VIII and Count IX, Plaintiff alleges that Doe Defendants IX-XX and

4  Defendant Skolnik are liable because they knew or should have known that their conduct

5  violated Plaintiff's constitutional rights relating to the incident grieved in grievance number

6  2006-4-1302. (Pl.'s Compl. 47-48, 50-51.) Plaintiff fails to supply facts supporting a plausible

7  claim for supervisory liability for Doe Defendants IX-XX or Defendant Skolnik. First, Plaintiff

8  does not factually allege that Doe Defendants IX-XX or Defendant Skolnik personally

9  participated in the alleged deprivation of his constitutional rights. Second, although Plaintiff

10 asserts the conclusion that the relevant Defendants "knew or should have known" of the

11 violations, he fails to provide facts that indicate and factually support such a conclusion. Last,

12 in Count IX Plaintiff concludes that Defendant Skolnik has failed to adopt adequate or sufficient

13 policies. However, Plaintiff again fails to assert factual allegations plausibly giving rise to that

14 conclusion. Thus, Plaintiff fails to state plausible claims in Count VIII and Count IX.

15                    **IV. RECOMMENDATION**

16      **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

17 **GRANTING IN PART and DENYING IN PART** Defendants' Motion to Dismiss (Doc. #23)

18 as follows:

19          •       Counts I and II should be dismissed as to all Defendants with prejudice;

20          •       Counts III and V through IX should be dismissed as to all Defendants without

21                  prejudice with leave to amend;

22          •       Count IV should be dismissed as to Defendants Cortez-Masto, Skolnik, Cox,

23                  Helling, Benedetti, Donat, Baca, Grafton, Haberfield, Walsh, Zappattini, Henley,

24                  Lietz, Stankus, and Baker without prejudice with leave to amend; and

25          •       The motion to dismiss on Count IV should be denied as to Defendant LaGier.

26

27 / / /

28                                    18

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.   These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 14, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

19